616 A.2d 143

John A. BALAS, Georgia Bargebuhr,
Judith Beck, et al., Petitioners,

v.

DEPARTMENT OF PUBLIC WELFARE, ALLEGHENY
COUNTY ASSISTANCE OFFICE, Respondent.

Commonwealth Court of Pennsylvania.

Argued Feb. 4, 1992.

Decided Sept. 30, 1992.

54

Paul D. Boas, for petitioners.

James S. Marshall, Asst. Counsel, for respondent.

Before PALLADINO and McGINLEY, JJ., and BARRY, Senior Judge.

McGINLEY, Judge.

John A. Balas and sixteen other supervisory employees (Petitioners) of the Allegheny County Assistance Office (ACAO) petition for review of orders of the State Civil Service Commission (Commission) that denied their appeals from the action of the Department of Public Welfare (DPW) in reclassifying them downward from the position of Casework Supervisor II (CWS II),[1] at Pay Range 40, to Income Maintenance Casework Supervisor (IMCWS), at Pay Range 38. The petitions from the seventeen separate orders of the Commission have been consolidated.

Petitioners previously petitioned for review from the Commission's denial of their appeals and requests for hearings under both Section 951(a) and (b) of the Civil Service Act

1. The "Caseworker" classification series includes the positions of Caseworker Trainee, Caseworker, Casework Supervisor 1, Casework Supervisor 2 and Casework Supervisor 3.

(Act).[2]   This court determined that, under the Supreme Court's recent decision in *McHale v. Department of Transportation*, 520 Pa. 282, 553 A.2d 956 (1989), the downward reclassifications were not "demotions" subject to appeal under Section 951(a), in which the appointing authority bears the burden of demonstrating just cause for the enumerated personnel action.   However, Petitioners had also appealed under Section 951(b), claiming discrimination in violation of Section 905.1 of the Act.[3]   They alleged that their reclassifications were done solely for the purpose of equalizing the pay differential between them and the IMCWSs, who were doing the same work at lower pay.

We concluded that Petitioners' allegations were sufficiently specific to establish a claim of discrimination and merited a Section 951(b) hearing, where the burden is placed on the appealing employee to show a violation of Section 905.1.   Next we referred to the general rule that personnel actions must be based on merit criteria that are relevant to the proper execution of the employee's duties, that are job-related and that touch in some logical and rational manner upon competence and ability.   We concluded that a *motive* to reclassify Petitioners based solely on an inappropriate classification of the position of IMCWS and unrelated to the proper performance of the duties of a CWS II, *if proved true*, would constitute discrimination based on non-merit criteria.   We remanded for a hearing.   *Balas v. Department of Public Welfare*, 128 Pa. Cmwlth.Ct. 205, 563 A.2d 219 (1989) (*Balas I* ).

At the hearing on remand, Petitioners presented testimony from five of their own number and from some other DPW employees not involved in the case.   Petitioners are all em-

---

**2.**   Act of August 5, 1941, P.L. 752, *as amended*, added by Section 27 of the Act of August 27, 1963, P.L. 1257, 71 P.S. § 741.951(a) and (b).

**3.**   Added by Section 25 of the Act of August 27, 1963, P.L. 1257, 71 P.S. § 741.905a.   Section 905.1 provides:

   No officer or employe of the Commonwealth shall discriminate against any person in recruitment, examination, appointment, training, promotion, retention or any other personnel action with regard to the classified service because of political or religious opinions or affiliations because of labor union affiliations or because of race, national origin *or other non-merit factors*.   (Emphasis added.)

ployees of DPW in the ACAO for fifteen years or longer. The position of CWS II was in place at least by 1971. In 1973 the "Income Maintenance" classification series was established, which included the position of Income Maintenance Supervisor (IMS).[4] The witnesses testified that there was no difference between the work of CWS IIs and IMSs—one who occupied either position supervised both Caseworkers and Income Maintenance Workers, and essentially performed the same work. Further, the witnesses testified that the job duties of CWS IIs did not change after the late 1960's or early 1970's—CWS IIs did the same work before and after the creation of the Income Maintenance series, and their work duties remained the same after they were reclassified as IMCWSs.[5] Some IMSs began protesting as early as 1981 about the disparity in pay between IMSs and CWS IIs. A 1982 memorandum from the Director of DPW's Office of Western Operations proposed addressing the problem by combining the two positions in a new "Public Assistance Supervisor" position at Pay Range 39.

The Chief of the Division of Position Management and Compensation of DPW, Nevin Shenck (Shenck), testified that beginning in 1981 or 1982 his office conducted a review of the classifications of positions in County Assistance Offices state wide and determined that they were inadequate. He stated that for a long time the CWS II positions were "earmarked" because his office thought they were misclassified, but they could not take any classification action until the adoption in 1982 or 1983 of 4 Pa.Code § 99.42, relating to reallocation to a lower class.[6] Had they acted earlier, the result would have

4. That classification series included Income Maintenance Worker Trainee, Income Maintenance Worker 1, Income Maintenance Worker 2, Income Maintenance Supervisor, Income Maintenance Manager 1 and Income Maintenance Manager 2.

5. Counsel for DPW stipulated that all Petitioners not yet called would testify in the same manner as those who had been called.

6. Section 99.42, as amended March 5, 1982, 12 Pa.B. 868, provided:
   When a position is allocated by proper classification authority to a class with a lower maximum rate of compensation due to change in the duties and responsibilities of the position as a result of action— such as but not limited to redistribution of duties, modification of

been furloughs, and not for the particular incumbents involved. In addition, Rebecca Urban Hill, a Personnel Analyst 2 in the ACAO, testified that in the early 1970's a caseworker's duties were approximately one-half direct provision of social services to individuals and one-half eligibility determinations, and that by the mid–1970's the nature of the work evolved to doing mostly eligibility determinations and a small amount of referrals to other social service providers.

DPW recommended changes in the classifications of County Assistance Offices employees to the Executive Board of the Commonwealth (Executive Board).[7] By Amendment No. 495 to the Compensation Plan for the Commonwealth, dated December 31, 1985, the Executive Board, among other actions, changed the titles of positions in the Income Maintenance series to the new Income Maintenance Casework series.[8] By memorandum of January 14, 1986, DPW reclassified some 159

responsibility, or general program reorganization—the regular or probationary incumbent of such position shall be reassigned if possible. Should a reassignment not be possible or should the regular or probationary incumbent of such position decline a reassignment, the incumbent shall continue in the reallocated position at the lower classification. An incumbent subject to such position reallocation shall have all rights of appeal as provided in the Civil Service Act (71 P.S. §§ 741.1–741.1005) except that an appeal to the Commission from the technical classification decision will not be accepted.

This provision was amended slightly in 1985 and was deleted November 15, 1991, 21 Pa.B. 5334. The effect of reclassifications is now addressed by 4 Pa.Code § 99.41, which provides simply that when an employee's job duties change or the Executive Board changes a class, any reclassification to a lower level will not be construed as a demotion.

7. The Executive Board consists of the Governor, who is chairman, and six other heads of administrative departments. Section 204 of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 64. Its powers include "[t]o standardize the qualifications for employment, and all titles, salaries, and wages, of persons employed by the administrative departments, boards, and commissions . . . ." Section 709(a) of the Administrative Code of 1929, 71 P.S. § 249(a).

8. Amendment 495 changed the title of Income Maintenance Worker Trainee to Income Maintenance Casework Trainee, changed that of Income Maintenance Worker 2 to Income Maintenance Caseworker, changed that of Income Maintenance Supervisor to Income Maintenance Casework Supervisor and abolished the title of Income Maintenance Worker 1. The Amendment provides job descriptions for the new titles.

CWS IIs state wide, eliminating the position of CWS II in County Assistance Offices, although that title is still used in other settings, such as mental hospitals.

The Personnel Director of the ACAO informed Petitioners of their reclassification by the letters of February 6, 1986. Each letter stated that, after review, the duties of their position were determined to be properly allocable to the Income Maintenance Casework Supervisor class. Petitioners were further informed that attempts to find alternate placement in a "complement classification" or one with the same pay range were not successful. The reclassification did not result in a reduction of current rate of compensation or anniversary date, and had no effect on Civil Service status. Each Petitioner was to report to the same office and work assignment; the action implied no negative reflection on performance or abilities. The letter stated that the action might be appealed under Section 951(b) of the Act if the Petitioner felt that it was based on discrimination or non-merit factors, but that an appeal from the technical classification decision was unacceptable. If the Petitioner wished to appeal the classification decision, he or she was to use the appropriate collective bargaining agreement grievance process in Chapter 28 of the Personnel Rules or Management Directive No. 505.7.

After the hearing on remand, the Commission made findings concerning the difference between positions and classifications, the authority of the Executive Board and the history of the positions involved. The Commission's crucial finding is No. 10: "The appointing authority determined that the Income Maintenance Casework Supervisor was the appropriate classification for the appellant's position. N.T. p. 157." Commission Adjudication at 2. The Commission emphasized the burden on an appellant to prove discrimination in a Section 951(b) appeal. It stated that the Petitioners were afforded the opportunity to prove their allegations, after *Balas I*, but that they "failed to meet the required standard of proof." *Id.* at 3.

The Commission distinguished cases cited by the Petitioners describing merit criteria, on the basis that those cases con-

cerned removal actions, whereas the present controversy involves "a reclassification decision made by an appointing authority acting in compliance with standards established by the Executive Board." *Id.* It quoted Section .707 of the Act:[9] "The classification of positions and the compensation of employes in the classified service shall conform to standards and rules adopted by the Executive Board." The Commission noted further that this court has held that the Executive Board may modify salary ranges for reasons of economy or other factors not related to an employee's performance. *O'Peil v. State Civil Service Commission,* 16 Pa.Cmwlth.Ct. 467, 332 A.2d 879 (1975).

The Commission summarized the testimony of DPW's witnesses Shenck and Hill and found that "the subject reclassification was executed solely as a means to correctly classify the [Petitioners], not to equalize pay with employes previously classified as Income Maintenance Supervisors." Commission Adjudication at 4. The Commission relied upon *Nevling v. Department of Public Welfare,* 106 Pa.Cmwlth.Ct. 625, 527 A.2d 610 (1987), to further support its decision. There, this court accepted a Commission ruling that a reclassification is appropriate when there is a change in job duties.[10] Finally, the Commission stated that to show discrimination, an appellant must prove either an intent to discriminate of the part of the appointing authority or a technical statutory violation, citing *Pronko v. Department of Revenue,* 114 Pa.Cmwlth.Ct. 428, 539 A.2d 456 (1988). The Commission was expressly

9. Added by Section 17 of the Act of August 27, 1963, P.L. 1257, 71 P.S. § 741.707.

10. *Nevling* was a furlough case under Section 951(a) of the Act where two food service employees challenged their furloughs (followed by offers of jobs at a lower classification) when the work of their agency was cut nearly in half. Among their claims was one that the reclassification procedure of 4 Pa.Code § 99.42 (with its requirement of an attempt to seek a reassignment) should have been used. The court approved the Commission's resolution of the "lack of work" issue based on its acceptance of DPW's interpretation of the regulation: furlough is proper where there is a drastic loss of work, but § 99.42 is proper where the appointing authority is adjusting the classification structure, upward or downward, to reflect the actual work allocated to each position.

aware of the principle that discrimination cannot be inferred, and it reiterated that the Petitioners failed to prove any of their allegations. The Commission denied the appeal.

■ The scope of our review of an adjudication of the Commission is limited to determining whether there was a constitutional violation or an error of law and whether the necessary findings of fact are supported by substantial evidence in the record. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Balas I.*

■ Petitioners first contend that the Commission sustained the reclassification contrary to *Balas I* because this personnel action was based on non-merit factors. They cite the description of merit-based factors found in *Corder v. State Civil Service Commission*, 2 Pa.Cmwlth.Ct. 462, 467, 279 A.2d 368, 371 (1971):

This means that any 'personnel action' carried out by the Commonwealth is to be scrutinized in the light of such merit criteria, as has the party failed to properly execute his duties, or has he done an act which hampers or frustrates the execution of same. The criteria must be job-related and in some rational and logical manner touch upon competency and ability.

Petitioners assert that the record establishes beyond dispute that that the nature and scope of their duties has not changed for almost twenty years. They aver that the most plausible motive for the action was to equalize their pay with the IMSs, coincidentally stifling the protests of the IMSs and saving money on wages. In addition, Petitioners note that proof of a technical violation of the Act has been recognized as proof of discrimination—proof of intent to discriminate need not be shown. *Pronko.*

Despite Petitioners' citation to *Corder,* they do not contend that a downward reclassification may be done only on the basis of unsatisfactory performance. As we observed in *Balas I,* the Supreme Court in *McHale* noted that downward reclassification based on merit criteria is a "demotion" rather than a reclassification. *McHale* held, "A reclassification of positions

to recognize a change in status or duties or to correct an error made in the original classification is not a demotion affording an employee the procedural rights created by the Civil Service Act." *McHale,* 520 Pa. at 287, 553 A.2d at 958.[11] In addition, the Petitioners' argument that 4 Pa.Code § 99.42 does not apply to their circumstances is a tacit concession that that section may be applied in some circumstances. As hard as this may be on Petitioners, the concept of reclassification based on factors other than individual job performance is firmly established.

As for the factual question of motive, our Supreme Court explained in *Allegheny Housing Rehabilitation Corp. v. Pennsylvania Human Relations Commission,* 516 Pa. 124, 532 A.2d 315 (1987), the shifting burden of going forward in a "traditional" discrimination case, where a plaintiff alleges disparate treatment on the basis of race, sex or other non-merit factors, i.e., intentional discrimination. If a plaintiff produces sufficient evidence that, if believed and otherwise unexplained, indicates that more than likely discrimination has occurred (that is, if the plaintiff makes out a prima facie case) then a presumption of discrimination is established. The defendant must then be heard to respond to offer a nondiscriminatory explanation. If there is no response, the presumption prevails. However, if the defendant makes a response sufficient to create a factual question as to motive, the presumption

11. *See also Office of Administration v. Orage,* 511 Pa. 528, 532 n. 1, 515 A.2d 852, 854 n. 1 (1986): "The Executive Board has promulgated rules defining 'reclassification' as the 'reassignment of a position from one class to a different class to recognize a change in duties or responsibilities or to correct an error in the original assignment' .... 4 Pa.Code § 23.2." At the time of *McHale* and *Orage* this provision appeared in the "Definitions" section of Chapter 23 "General Provisions" of Subpart C. "Personnel Rules" of Part II of Title 4 Pa.Code, which relates to the Executive Board. The definition expressly described reclassification both upward and downward. This provision and all others in the Personnel Rules that did not relate to leave of absence with pay were deleted by the Executive Board on June 8, 1985, 15 Pa.B. 2094. The Executive Board stated that in the future decisions in those areas of responsibility will be adopted by simple resolution and communicated to state agencies and employees through the Directives Management System under 4 Pa.Code § 1.2 or some other appropriate means. *Id.*

drops from the case, the issue is joined, and the trier of fact must determine which explanation it believes. *Allegheny Housing Rehabilitation Corp.*, 516 Pa. at 131, 532 A.2d at 319.

■ In *Balas I* we stated that the Petitioners' allegations make out a prima facie case of intent to discriminate—they allege that they were adversely reclassified without any claim of unsatisfactory performance, for the non-merit purpose of equalizing pay with another group of employees, in disregard of the appropriate classification of their positions. At the hearing in this case Petitioners supported their allegations with testimony and documentary evidence, thereby making out their prima facie case. DPW then responded with evidence of a proper motive, namely, that it determined after study that the jobs were misclassified. DPW maintains that action was taken only for the purpose of correcting that situation, without any intent to discriminate. The Commission, as trier of fact, chose to accept the evidence of DPW over that of the Petitioners. Although Petitioners argue that little weight should be accorded the testimony of Shenck and Hill, they do not raise a claim that the testimony was, as a matter of law, so irrelevant or incompetent that it must be stricken, thereby eliminating the response to the prima facie case. Questions of credibility and of the weight to be accorded evidence and the resolution of conflicts are for the Commission. This court will not separately weigh evidence and substitute its judgment, even though we might have reached a different factual conclusion. *Anastasi v. Civil Service Commission City of Philadelphia*, 88 Pa.Cmwlth.Ct. 6, 488 A.2d 384 (1985).

It must be emphasized that the Commission found that DPW did not act with an improper intent, not that the classification made by DPW was "correct." In *Gorton v. State Civil Service Commission*, 35 Pa.Cmwlth.Ct. 319, 385 A.2d 1026 (1978), this court explained that the effect of amendments to the Act in 1963, including the addition of Section 707, noted above, was the removal of authority over job classification and related compensation matters from the Commission and the placing of authority over such matters in the Executive Board.

Section 905.1 of the Act applies to the Executive Board as well as all other agencies—the Executive Board may not classify or set standards with a discriminatory intent, and the Commission may adjudicate such a claim because it is a *discrimination* matter rather than a *classification* matter.[12] The determination for the Commission is whether there was discrimination, not whether the act of classification was correct or advisable.

Next, Petitioners incorrectly assert that, at a minimum, they have proved a technical violation of the Act, and therefore, under *Pronko*, they need not prove intent to discriminate. *Pronko* involved a *procedural* error in a personnel action, the misdesignation of a furlough unit.[13] The court held:

[I]n cases brought under Section 951(b) where a technical violation of the Act (sometimes referred to as a procedural error, procedural impropriety or procedural 'discrimination') constitutes the alleged discrimination, no showing of intent is required.... The reason for our holding is that often in cases of technical non-compliance what has occurred is administrative error or mistake. Thus, intent to discriminate could not be shown because it is frequently nonexistent.

*Pronko*, 114 Pa.Cmwlth.Ct. at 439–40, 539 A.2d at 462 (citing Debra Punsky Rand, An Examination of Discrimination Under the Pennsylvania Civil Service Act, 25 Duq.L.Rev. 209, 236 (1987)).[14] Then the court went on to state: "We wish to

**12.** *See O'Peil*, 16 Pa.Cmwlth.Ct. at 471 n. 5, 332 A.2d at 882 n. 5: "The Executive Board ... may modify salary ranges for reasons of economy or other 'non-merit' factors, if not discriminatory within the provisions of the statute and not constitutionally prohibited."

**13.** *See also Pennsylvania Board of Probation and Parole v. Baker*, 51 Pa.Cmwlth.Ct. 501, 414 A.2d 1117(1980), *appealed again after remand sub nom. Alterman v. Baker*, 71 Pa.Cmwlth.Ct. 124, 454 A.2d 1154 (1983), *appealed again after remand sub nom. Pennsylvania Board of Probation and Parole v. Baker*, 82 Pa.Cmwlth.Ct. 86, 474 A.2d 415 (1984) (use of unauthorized testing procedures for promotion).

**14.** The same analysis has been applied to claims of discrimination based on mistake of fact rather than intent. *See, e.g., State Correctional Institution at Graterford v. Goodridge*, 87 Pa.Cmwlth.Ct. 527, 487 A.2d

emphasize, however, that our holding does not excuse the complaining individual from proving intent in the traditional type of discrimination case." *Id.* at 440, 539 A.2d at 462 (footnote omitted).

In the present case Petitioners do not claim an error in the procedure by which they were reclassified. Petitioners do not dispute that an appointing authority may reclassify its employees, nor do they contend, for example, that DPW used an improper procedure by failing to conduct the search for equivalent reassignment positions that was required by Section 99.42. As for mistake, Petitioners were afforded the opportunity to prove that the reclassification was a mistake because their job duties never changed, but the Commission determined that issue against them. Petitioners' challenge is a "traditional" claim of discrimination based on non-merit factors, not a claim of procedural discrimination or mistake of fact.

■ The Petitioners' final contention is an argument in the alternative that even if DPW proved a change in job duties some thirteen years earlier, the Commission erred by affirming a reclassification under 4 Pa.Code § 99.42 in those circumstances. They challenge DPW's interpretation of the regulation and maintain that the regulation only provides for reclassification in the context of contemporaneous or quasi-contemporaneous changes in job duties.[15] However, even if the Petitioners' interpretation is correct, this contention constitutes a challenge to the classification itself, and under *Gorton* and related cases, the Commission does not have authority to adjudicate such a matter. The Petitioners' only remedy is to pursue procedures established by the Executive Board for challenging the propriety of an act of classification or reclassification.

1036 (1985) (initial determination of a falsified application, later found to be incorrect).

**15.** The Petitioners argue that Section 99.42 does not provide a proper *substantive* justification for their reclassification. This is not a claim of procedural error or mistake of fact.

Accordingly, we are constrained to affirm the Commission Adjudications as to each of Petitioners.

## ORDER

AND NOW, this 30th day of September, 1992, the orders of the State Civil Service Commission in the above-captioned matter, dated October 19, 1990, are affirmed.