The BOARD OF PUBLIC EDUCATION OF the SCHOOL DISTRICT OF PITTSBURGH, Petitioner,

v.

PENNSYLVANIA HUMAN RELATIONS COMMISSION, Respondent.

Commonwealth Court of Pennsylvania.

Argued May 15, 1996.

Decided Sept. 23, 1996.

Robert J. Stefanko, for Petitioner.

Lorraine S. Caplan, Assistant Counsel, and Lester Crawford, for Respondent.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

McGINLEY, Judge.

The Board of Public Education (School Board) of the School District of Pittsburgh (School District) appeals from an interlocutory order of the Pennsylvania Human Relations Commission (Commission) which denied the School Board's motion to dismiss the first issue of a complaint for lack of standing.

On August 24, 1992, five parents of African–American students in the School District, identifying themselves as Advocates for African–American Students (Advocates), filed a complaint with the Commission under Sections 2, 3 and 5 of the Pennsylvania Human Relations Act [1] (Human Relations Act) and Sections 2 and 4 of the Pennsylvania Fair Educational Opportunities Act [2] (Fair Education Act). The complaint alleged, among other things,[3] that the School Board engaged in discriminatory practices by hiring Louise Brennen (Brennen), a caucasian, as superintendent for the School District, instead of a more qualified African–American candidate.

After investigation the Commission found probable cause. The School Board filed a motion seeking dismissal of the complaint in its entirety for lack of standing. On October 28, 1992, the Commission issued an interlocutory order finding that the parents had standing to assert claims of educational discrimination on behalf of their minor children. Accordingly, the Commission denied the School Board's motion to dismiss.

Approximately two years later, the School Board filed another motion to dismiss, this time challenging only the first issue of the complaint; the Advocates' standing to allege the discriminatory hiring of Brennen. On February 14, 1995, the Commission issued a second interlocutory order denying the School Board's motion stating that it already ruled on the matter in the interlocutory order issued on October 28, 1992.

The School Board filed a third motion requesting that the Commission amend the interlocutory order of February 14, 1995, pursuant to 42 Pa.C.S. § 702(b) [4] to facilitate an immediate appeal to this Court. The Commission denied the motion and the School Board now appeals, pursuant to Chapter 15

1. Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 952, 953 and 955.

2. Act of July 17, 1961, P.L. 776, *as amended*, 24 P.S. §§ 5002 and 5004.

3. The complaint also alleges that the School District engaged in discriminatory practices by (1) disciplining African–American students at a higher rate than white students, (2) giving African–American students lower grades than white students, (3) failing to help African–American students reach the national norm in academic achievement, and (4) excluding African–American students from special programs and projects.

4. 42 Pa.C.S. § 702(b) provides in pertinent part:

When a court or other government unit, in making an interlocutory order ... shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may

of the Pennsylvania Rules of Appellate Procedure,[5] from the Commission's denial of its motion to dismiss the first issue of the complaint.[6]

 The School Board asserts that the Advocates do not have standing to challenge the hiring of Brennen under the three-part test set forth by our Supreme Court in *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975). Our scope of review of an adjudication of the Commission is limited to determining whether there was a constitutional violation or an error of law and whether the necessary findings of fact are supported by substantial evidence in the record. *Borough of Norristown v. Pennsylvania Human Relations Commission*, 165 Pa.Cmwlth. 661, 645 A.2d 939, *appeal denied*, 539 Pa. 682, 652 A.2d 1327 (1994).

In denying the School Board's motion to dismiss the Commission found that the parents have standing to challenge the School Board's appointment of Brennen on behalf of their minor children based upon the allegation of discrimination. We disagree.

In *William Penn Parking*, parking lot operators and city resident taxpayers brought a statutory appeal challenging the city of Pittsburgh's ordinance imposing a tax on nonresidential parking patrons. The city filed preliminary objections alleging, among other things, that the plaintiffs did not have standing to bring the action. The common pleas court agreed and dismissed the petition without leave to amend. This Court reversed and our Supreme Court granted the city's petition for appeal.

 On appeal the Supreme Court noted that in order to have standing to bring a

cause of action a person must have a substantial, direct and immediate interest in the subject matter of the litigation. The requirement of a "substantial" interest means that the individual's interest must have substance, i.e., there must be some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law. The requirement that an interest be "direct" necessitates causation. The last requirement is that the interest be "immediate" and not remote, i.e., there must be a close causal connection between the action complained of and the injury. *William Penn Parking*. The challenged ordinance required the individual plaintiffs to pay a tax. Thus, the Supreme Court concluded that the individual plaintiffs successfully proved that they had an interest in the litigated matter which was direct, substantial and immediate. "Clearly the individual plaintiffs assert individual interest—in not being compelled to expend money—beyond the interest of all citizens in compliance with the law." *William Penn Parking*, 464 Pa. at 204, 346 A.2d at 287.

The issue before this Court is whether the Advocates have standing to challenge the hiring practices of the School Board. The Advocates' allege that the School Board unlawfully discriminated by hiring a caucasian instead of a more qualified African–American.[7]

 It is in the interest of all citizens that the School Board comply with the law and not engage in discriminatory hiring. The Advocates have failed to show a discernible adverse effect to any other interest. In addition, assuming arguendo we found that the Advocates have standing, we could not

---

materially advance the ultimate termination of the matter, it shall so state in such order.

5. The note to Pa. R.A.P. 1311 states in pertinent part:

Where the administrative agency ... refuses to amend its order to include the prescribed statement, a petition for review under Chapter 15 ... is the proper mode of determining whether the case is so egregious as to justify prerogative appellate correction of the exercise of discretion by the lower tribunal.

6. By order dated May 9, 1995, this Court granted the School Board's petition for review.

7. It must be emphasized that the African–American candidate who failed to attain the appointment is not a party to this action nor has she participated in any way in the proceedings.

fashion a remedy because the African-American candidate is not a party to this action.

Accordingly, we reverse the Commission's denial of the School Board's motion to dismiss issue one for lack of standing and remand the matter for a hearing on the other issues raised in the complaint.

### ORDER

AND NOW, to wit, this 23rd day of September, 1996, the order of the Pennsylvania Human Relations Commission at Nos. E–60609D through E–60612D and S–481 through S–484, dated February 14, 1995, is reversed and The Board of Public Education of the School District of Pittsburgh's motion to dismiss issue one of the complaint is granted. The matter is remanded for a hearing on the other issues raised in the complaint.

Jurisdiction is relinquished.

FRIEDMAN, Judge, dissenting.

Unlike the Majority, I believe that, with respect to the alleged discriminatory hiring of Louise Brennen (Brennen), the Advocates for African American Students (Advocates) meet all three requirements for standing set forth in *Wm. Penn Parking Garage v. Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975); that is, they have a substantial, direct and immediate interest in the subject matter of the litigation. Therefore, I respectfully dissent.

Here, Advocates are parents of students within the School District. As parents, they have a substantial interest in the personal and academic development of their minor children, which is distinct from the abstract interest of all citizens in the educational system. Moreover, because Advocates' children are also "minority" students, and because the superintendent of the School District is supposed to be an advocate for "minority" students, Advocates also have a considerable interest in the selection of the person hired to be the superintendent.[1] In this instance, Advocates allege that the School District hired a superintendent who lacks the stated qualifications for the position; that a member of the School Board made racial remarks concerning a more highly qualified African American candidate prior to the vote; and that other members of the School Board voted against the African American candidate out of fear that, in her role as advocate for "minority" students, she would try to eliminate existing discriminatory educational practices which have harmed African American students.[2] If these allegations are true, I have no doubt that Advocates' substantial interest in the education of their children has been directly, immediately and adversely affected by the School Board's hiring decision. Thus, I would conclude that, under *Wm. Penn Parking*, Advocates have standing to challenge the hiring of Brennen as superintendent of the School District.

Advocates also have standing under section 7 of the Fair Education Act, 24 P.S. § 5007 (emphasis added), which provides:

Any aggrieved person *or anyone representing the aggrieved person* may ... file

---

1. The superintendent's job is, *inter alia*, to design and implement innovative programs that have a positive impact on student learning in a diverse student population, to restructure academic programs to meet the changing needs of an urban school district, to promote the philosophy that all students can learn, to be an *advocate for "minority" students*, and to develop and implement multicultural programs that address the concerns of an urban community. (R.R. at 12a.)

2. In particular, Advocates allege: (1) the superintendent position *required* at least five years experience as a deputy superintendent in an urban school district; the African American candidate had more than five years, but Brennen had only two years; (2) the *preferred* candidate was to have an earned doctorate in educational administration or a related field; the African American candidate had an earned doctorate, but Brennen did not; (3) the African American candidate met more of the other stated qualifications than Brennen; (4) William Larkin, a School Board member, stated sometime prior to casting his vote that he would not vote for the African American candidate because "she is Black ... and if she gets in, then the school district would turn Black ... we can't have that ...."; (5) other School Board members feared that the African American candidate, if hired as superintendent, would have exercised her authority to rectify the discriminatory educational practices which have caused harm to African American students within the School District. (R.R. at 2a–4a; Complaint, Nos. 3(A) and 3(F).)

with the commission a verified complaint ... which shall set forth the particulars [of the unfair educational practices.]

It is an "unfair educational practice" to discriminate against any student because of race, to *aid* in such discrimination or to *attempt* such discrimination *either directly or indirectly*. Sections 4(a)(3) and 4(b) of the Fair Education Act, 24 P.S. §§ 5004(a)(3) and 5004(b). Thus, the statute gives Advocates standing to challenge the hiring of the superintendent on behalf of students who have been victims of race discrimination. Indeed, if it is true that, in hiring Brennen, certain members of the School Board attempted to perpetuate existing discriminatory educational practices, then the School Board's action was an "unfair educational practice" under the Fair Education Act.

Finally, section 9(a) of the Human Relations Act, 43 P.S. § 959(a) (emphasis added), also confers standing upon Advocates to challenge the School Board's hiring of Brennen by providing that "[a]ny person *claiming* to be aggrieved by an alleged unlawful discriminatory practice may ... file with the Commission a verified complaint...." Here, Advocates *claim* to be aggrieved by the hiring of Brennen as superintendent because, as alleged, Brennen is not likely to try to end existing discriminatory educational practices which harm their children.[3]

For the foregoing reasons, I would affirm the Commission's denial of the School Board's motion to dismiss for lack of standing.

SMITH, J., joins in this dissent.

---

**3.** Even if Advocates lacked standing altogether, under section 9(a) of the Human Relations Act, the Commission may, upon its own initiative after being informed of a discriminatory practice, file its own complaint.